UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ROSALYN G.,[1]

      Plaintiff,

v.                        Civil Action No. 2:21-cv-275

KILOLO KIJAKAZI,[2]
*Acting Commissioner of*
*Social Security,*

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Rosalyn G. ("Rosalyn" or "Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Specifically, Plaintiff cites two errors. First, Plaintiff claims that substantial evidence does not support the Administrative Law Judge's ("ALJ") restrictive residual functional capacity ("RFC") finding based on her physical limitations. Plaintiff also claims that she did not acquire skills from her

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

past work as a certified nursing aide ("CNA") that are transferrable to other gainful employment as cited by the vocational expert ("VE"). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this Report recommends that the court affirm the final decision of the Commissioner.

## I.   PROCEDURAL BACKGROUND

On August 26, 2019, Plaintiff filed for DIB. (R. 69). Plaintiff alleged disability beginning June 1, 2019, based on scoliosis, degenerative disc disease, disc herniation in the cervical spine, and osteoarthritis of both legs and hands. (R. 70-71, 73). The state agency denied her application initially and upon reconsideration. (R. 15). Plaintiff requested an administrative hearing, which was held via telephone on October 19, 2020. Id. Counsel represented Plaintiff at the hearing, and a VE testified. Id.

On November 9, 2020, the ALJ denied Plaintiff's DIB claim, finding she was not disabled during the period alleged. (R. 28). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix

1.   (R. 18).   On March 19, 2021, the Appeals Council denied Plaintiff's request for review.   (R. 1).

On May 17, 2021, Plaintiff filed her complaint in this court. Compl. (ECF No. 1).  She seeks judicial review of Defendant's final decision that she was not disabled, claiming that "the denial of her disability claim is not supported by substantial evidence . . . and all other applicable laws and regulations," and requesting remand.  Id. ¶ 6 (ECF No. 1, at 2).  Plaintiff moved for summary judgment.   (ECF No. 11).  She argues that the case should be reversed or remanded because the ALJ (1) failed to properly determine her RFC by misconstruing evidence of her physical limitations that required bone grafting surgery, and (2) erred in accepting the VE's determination that her previous job as a CNA for four months constituted past relevant work ("PRW") with transferrable skills to a companion aide job.  Pl.'s Br. Supp. Mot. Summ. J. ("Pl.'s Br.") (ECF No. 12, at 8-9).  Defendant opposed Plaintiff's motion and moved for summary judgment.  (ECF No. 13).  Defendant argues that (1) the ALJ properly determined that Plaintiff's physical limitations do not require a more restrictive RFC, and (2) substantial evidence supports the ALJ's decision that Plaintiff's physical limitations allow her to work as a companion aide. Def.'s Mem. Supp. Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J.  ("Def.'s Opp'n") (ECF No. 14).  Plaintiff did not

reply.   After a review of the record, this Report considers each of these arguments.

## II.   FACTUAL BACKGROUND

Plaintiff was born on December 22, 1961, and she was 57 years old when she filed her DIB application.   (R. 26, 69-70).   She meets the insured status requirements under the Social Security Act through December 31, 2024.   (R. 17).   She has not engaged in substantial gainful activity since June 1, 2019, the alleged onset date.   Id.   She has attended two years of college and reported past work as a CNA and a medical assistant.   (R. 26, 39, 41).

## A.   Plaintiff's Medical Visits and History of Knee and Ankle Pain

Plaintiff reported a history of right knee pain.   (R. 642). In 2015, Plaintiff was seen in the emergency department at Virginia Orthopaedic and Spine Specialists ("VOSS") for swelling in her right knee.   Id.   In November 2017, a magnetic resonance image ("MRI") revealed meniscus tears in her right knee.   (R. 694).   On November 12, 2018, she visited Physician's Assistant ("PA-C") Jon C. Brillhart (VOSS) and reported pain while standing and walking short distances.   (R. 642).   PA-C Brillhart examined Plaintiff's right knee and found a limited range of motion secondary to stiffness, a positive McMurray's sign,[3] and knee effusion, but he

---

[3] In a McMurray's test, "[t]he lower leg is rotated each way on the knee and the knee flexed.   If there is a meniscal tear a 'clunk' is said to be felt by the examiner's hand resting on the knee."   1 Medical

found fully intact distal sensation and no calf tenderness. (R. 643). Based on x-rays and his examination, PA-C Brillhart diagnosed Plaintiff with chronic right knee pain, joint effusion, primary osteoarthritis of the right knee, and knee synovitis. Id. He administered an aspiration and cortisone injection to Plaintiff's right knee. Id. During a follow-up visit on December 10, 2018, PA-C Brillhart also diagnosed Plaintiff with internal derangement of the right knee involving the lateral and medial meniscus. (R. 653).

On December 13, 2018, Plaintiff reported recurring right knee pain to Steven C. Blasdell, M.D. (VOSS). (R. 659). Dr. Blasdell reviewed the x-rays and made various right knee diagnoses, including meniscus tears, chronic pain, osteoarthritis, and damage to knee cartilage. (R. 663-64). He administered steroid and pain relief injections to the knee. (R. 664). Dr. Blasdell also scheduled her for minimally invasive surgery on her right meniscus. Id. A January 2019 X-ray showed no fractures to Plaintiff's ankles, (R. 291), and an MRI revealed a hyperintense lesion on Plaintiff's left ankle, (R. 925).

In February 2019, Plaintiff consulted with Sonia A. Patel, M.D., who noted that she cancelled her knee surgery because it was

---

Information System for Lawyers § 6:202 (2d ed.) (Westlaw updated Aug. 2021). A "clunk or click" is a positive McMurray's sign. Id.

"not bothering her" and that Plaintiff wanted to return to work. (R. 495). The following month,[4] Plaintiff visited Dr. Brillhart for recurring right knee pain, who diagnosed her with an "[a]cute worsening of chronic right knee pain secondary to underlying osteoarthritis with effusion" and again administered a cortisone injection to her right knee. (R. 304-05). Over seven months later, on October 29, 2019, Plaintiff returned and received the same diagnosis and treatment as her previous visit. (R. 481-82). She had her provider complete disability forms. Id.

On December 20, 2019, Plaintiff visited Dr. Blasdell for right knee and ankle pain. (R. 689). Dr. Blasdell made several right knee and extremity diagnoses, including tendinitis, chronic knee and ankle pain, plantar fasciitis, and osteoarthritis. (R. 696). She was given a short fracture walker and received injections to her right knee and ankle. (R. 695). On January 28, 2020, Michael A. Caines, M.D. (VOSS), confirmed via diagnostic imaging the presence of lesions in Plaintiff's right and left ankles. (R. 747). Because of her recurring pain and bone scan results, Dr. Caines referred Plaintiff to The Medical College of Virginia ("VCU") to assess eligibility for bone grafting surgery. (R. 743).

---

[4] On the same day, Plaintiff visited St. Mary's Hospital to inquire about obtaining social security disability benefits. (R. 305). After multiple attempts to follow up with Plaintiff, St. Mary's Hospital closed her case management file. (R. 490-91).

On February 18, 2020, Plaintiff visited Anna C. Greenwood, M.D. (VCU), for her ankle lesions. (R. 915). Dr. Greenwood diagnosed Plaintiff with early signs of arthritis in both ankles and ankle bone lesions based on bone scans, and scheduled Plaintiff for curettage bone grafting surgery. (R. 917). On March 4, Plaintiff underwent bone graft surgery on her left ankle at VCU. (R. 866-68). The hospital discharged her the same day with a rolling walker and crutches. (R. 816-18). At her first postoperative appointment on March 17, Plaintiff reported "minimal pain" and was non-weight bearing in a boot. (R. 810). Dr. Greenwood found that the surgical site was "healing well" with minimal swelling. (R. 811). She instructed Plaintiff to transition from non-weight bearing to weight bearing in a boot. (R. 810-11). By April 17, Plaintiff had "started wearing normal shoes" and reported that her left ankle felt "better" after the surgery. (R. 790). Dr. Greenwood advised Plaintiff to "[c]ontinue activity as tolerated." Id.

On May 8, 2020, during Plaintiff's last medical visit before her hearing with the ALJ, she reported right knee and back pain to Dr. Blasdell via a virtual platform. (R. 1078-81). Dr. Blasdell diagnosed Plaintiff with lumbar radiculopathy and lumbar pain in addition to primary osteoarthritis of right knee and chronic pain of right knee. (R. 1080).

## C.    Testimony Before the ALJ

The ALJ questioned Plaintiff at the hearing on October 19, 2020.   (R. 38-45, 48-56).   The ALJ also heard testimony from the VE, Robert Edwards.   (R. 45-48, 56-67).

### 1.    Plaintiff's Testimony

On questioning by the ALJ, Plaintiff testified that she drives no more than 15 minutes at a time and cannot sit as a passenger for longer than that period.   (R. 40).   She further testified to pain in her right leg, right hip, and lower back while sitting. Id.   Plaintiff said she ended her two most recent employment positions as a customer service representative because she experienced "excruciating pain from sitting down for [too] long" and took frequent bathroom breaks that she attributed to an "enlarged uterus[] and oversized fibroids" affecting her bladder. (R. 41-43).   She represented that she looked for work as a CNA after her most recent job, but prospective positions required physical work that she believed was unsuitable for her condition. (R. 45).   Plaintiff also testified to taking hydrocodone, remaining from her ankle surgery, several times a week for "severe" pain after completing household chores.   (R. 47-48).   She also occasionally uses a right crutch and two knee braces.   (R. 49-50).

Around her house, Plaintiff walks "very slowly" up and down the stairs and uses the handrails.   (R. 50).   On a typical day, she makes breakfast, watches television, reads the news, does

household chores, and talks to her grandchildren. (R. 51). Plaintiff testified that her "husband does a lot of stuff for [her] because [she] can't do a lot of things that [she] used to do." Id. She represented that she takes breaks while vacuuming. Id. She said her spouse mostly prepares meals, but when she prepares meals, she sits down. Id. Although her husband mostly shops for groceries and accompanies her to the store, she occasionally shops alone. Id. She also occasionally does yardwork, including trimming the hedges and planting flowers with her husband's assistance. (R. 51-52). Plaintiff testified that she sits for 15 minutes at most and can walk for 20 minutes without stopping. (R. 52-53). Plaintiff further testified that she exercises her upper body by stretching. (R. 53). Moreover, she represented that she does not require any assistance for personal hygiene or taking a shower, but she said that she occasionally requires assistance with her shoes. Id. Plaintiff testified that ten pounds is the heaviest she can lift and carry without aggravating her joints. Id. She believes that fatigue prevents her from working despite her desire to return to work. (R. 53-54, 56).

2.    **Testimony from the VE**

On the ALJ's direct questioning, the VE characterized Plaintiff's past CNA job as medium, semi-skilled, with a Specific Vocational Preparation ("SVP") code of 4; and her past medical assistant job as light, skilled, with SVP code of 5. (R. 48).

9

The VE confirmed that Plaintiff's actual performance of the job corresponded to how the Dictionary of Occupational Titles ("DOT") described the jobs, although the VE said Plaintiff may have performed the CNA job at the heavy level. Id. The ALJ's first hypothetical for the VE posited a person with the same age, education, and work experience as Plaintiff with the following limitations:

> [T]he individual can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk for six hours and sit for eight hours during an eight-hour workday with customary breaks; push and pull with the right lower extremity occasionally; frequently stoop and climb ramps and stairs; occasionally kneel, crouch, crawl and climb ladders, ropes or scaffolds.

(R. 57). The VE testified that a person with such limitations could perform Plaintiff's past work as a medical assistant. (R. 58). The ALJ's second hypothetical for the VE further posited a person who was limited to "stand[ing] and walk[ing] for only four hours during an eight-hour workday with customary breaks and . . . alternat[ing] between sitting and standing about every 30 minutes while at the work station and on task." Id. Although a person with such limitations could not perform any of Plaintiff's past relevant work, the VE testified that jobs would be available to such a person with Plaintiff's transferrable skills. Id.

According to the VE, Plaintiff's transferrable skills from her past work "include knowledge of some basic medical terminology, the taking of vital signs, the performance of some basic medical

and personal care procedures, and computer skills, report writing and record keeping." (R. 58). The VE identified a case aide (DOT 195.367-010) with 37,000 jobs nationally; a companion aide (DOT 309.677-010) with 30,000 jobs nationally; and a medical clerk (DOT 205.362-018) with 17,000 jobs nationally. (R. 59-60).

The ALJ further modified the hypothetical to a person who "cannot crawl, kneel or climb ladders, ropes or scaffolds, and can frequently balance, and only occasionally climb ramps or stairs." (R. 60). The VE testified that the previously cited jobs would be available to a person with such limitations holding Plaintiff's transferrable skills. (R. 61). After the ALJ's additional questioning, the VE testified that the medical clerk job would still be available as sedentary. Id. The VE testified that an employer will not tolerate a less than 85% productivity level, unscheduled breaks exceeding 10% of shift time, or more than one absence per month. (R. 61-62).

On cross-examination, the VE rejected counsel's description of the case aide job as "a social services job" unrelated to the medical field because the position involved providing for "personal care needs," and the VE had reduced the national numbers appropriately. (R. 65). The VE also testified that limiting a person's ability to "occasionally lifting ten pounds" would not affect the availability of the previously cited jobs. (R. 66).

11

### III. **STANDARD OF REVIEW**

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see

<u>also</u> <u>Lewis v. Berryhill</u>, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.  <u>ANALYSIS</u>

Plaintiff claims that the ALJ's conclusion that she was not disabled is unsupported by substantial evidence. <u>See</u> Pl.'s Br. (ECF No. 12, at 9-11). First, Plaintiff maintains that the ALJ erred in finding that she can stand or walk up to four hours during an eight-hour work shift, and that her physical limitations render her unable to perform the medical clerk and case aide jobs cited by the VE. <u>Id</u>. at 9-11. Plaintiff also maintains that the ALJ improperly determined that her past work as a CNA qualifies as PRW, and that she did not acquire skills from her CNA job that are transferrable to the companion aide job cited by the VE. <u>Id</u>. at 8-9. As explained below, I find no error in the ALJ's analysis of the evidence, including the ALJ's findings that Plaintiff could stand or walk up to four hours during an eight-hour work shift and that Plaintiff's past CNA job qualifies as PRW. Accordingly, I conclude that remand is not warranted and therefore recommend that the court affirm the Commissioner's decision.

## A.  Framework for SSA Disability Evaluation

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d).  As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a).  An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination.  20 C.F.R. § 404.1520(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

14

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5. Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate

15

responsibility for making factual findings and weighing the evidence rests with the ALJ. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.   The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date, except for the fourth quarter of 2019, but the ALJ reserved judgment on that timeframe.[5] (R. 17). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: right ankle and tibial disorders, bilateral knee disorders, osteoarthritis, uterine fibroids, diverticulosis, and obesity. (R. 18). At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 18). The ALJ developed a finding regarding Plaintiff's RFC. (R. 20). He determined that Plaintiff could

> perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently, sit eight hours, and stand and/or walk four hours but she must be able to alternate between sitting and standing about every 30

---

[5] The ALJ noted that Plaintiff earned $8,461.00 in the fourth quarter of 2019. (R. 17). The threshold for SGA in 2019 was $1,220.00 per month. <u>Id.</u> Nevertheless, the ALJ "reserv[ed] judgment" on whether her fourth quarter earnings amounted to SGA and proceeded with the sequential inquiry. <u>Id.</u>

minutes while at the work station and on task. She can push and/or pull with right lower extremity occasionally. She cannot crawl, kneel, or climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs and crouch. She can frequently stoop and balance.

(R. 20). At step four, the ALJ concluded that Plaintiff could not perform PRW. (R. 26). At step five, the ALJ determined that Plaintiff had "acquired work skills from [her] past relevant work that [were] transferrable to other occupations with jobs existing in significant numbers in the national economy." Id. The ALJ ultimately found that Plaintiff was not disabled. (R. 27).

## C.  The ALJ's Finding that Plaintiff Could Stand or Walk for Four Hours During a Work Shift Is Supported by Substantial Evidence.

Plaintiff first argues that the ALJ erred in assigning an RFC in which she could stand or walk for four hours during a work shift, claiming that her bilateral knee osteoarthritis and lower leg limitations requiring bone grafting surgery precluded it.[6] See Pl.'s Br. (ECF No. 12, at 10). However, the Commissioner argues that Plaintiff successfully recovered from her bone grafting surgery after two months, and any limitations resulting from the surgery healed within four months. Def.'s Opp'n (ECF No. 14, at

---

[6] Plaintiff claims that both the case aid and medical clerk jobs would be unavailable if her RFC were adjusted to reflect a more restrictive RFC. Pl.'s Br. (ECF No. 12, at 10-12). However, because the RFC is supported by substantial evidence, and the VE testified that these positions would be available to Plaintiff, (R. 559-61, 66), I do not address these positions independently.

8-9). The RFC assesses how the claimant's "physical and mental limitations . . . affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In fashioning the RFC, the ALJ will consider "all of the relevant medical and other evidence." § 404.1545(a)(3); see also SSR 9-8p, 1996 WL 374184, at *5 (July 2, 1996) ("The RFC assessment must be based on all of the relevant evidence in the case record[.]" (emphasis in original)). After considering the ALJ's opinion and the record, I conclude that the ALJ's RFC finding is supported by substantial evidence.

Substantial evidence supports the ALJ's finding that Plaintiff could stand or walk for four hours during a work shift. The ALJ found that Plaintiff's "conservative course of treatment" did not support her alleged loss of functioning. (R. 24). The ALJ relied on her generally normal physical exam findings, such as "gait, strength, reflexes, sensation, and range of motion and no more than 1+ effusion." Id. The ALJ also relied on Plaintiff's testimony that she could perform activities of daily living. Id. The ALJ also noted that her treatment provider did not assign restrictions. Id. Each of these considerations substantially supports the ALJ's RFC, and the ALJ appropriately found that Plaintiff's statements about her pain were inconsistent with the record evidence. Id.

Regarding Plaintiff's main argument, her bone grafting surgery does not require a new RFC after January 2020 because her

18

limitations resolved quickly with treatment.   Impairments are severe only when expected to last a period of 12 months.   20 C.F.R. § 1509.   Plaintiff contends that "objectively worsening medical evidence of both lower extremities" from January to March 2020 requires a more restrictive walking and standing limitation.   See Pl.'s Br. (ECF No. 12, at 10).   However, her pre-surgical findings were relatively mild.   In January 2020, Plaintiff displayed a normal gait, full range of motion, normal motor and sensory exams, and only mild tenderness and ankle swelling.   (R. 726).   While bone scans indicated lesions on Plaintiff's ankles, a February 2020 examination found intact sensation, no significant swelling, and no ankle effusion but minimal tenderness.   (R. 743, 747, 916).

Plaintiff also recovered successfully from her March 2020 left ankle bone grafting surgery.   On the day of the surgery, she was discharged with a rolling walker and crutches.   (R. 816-18, 866).   At follow-up appointment, Plaintiff had intact sensation and was "healing well" despite swelling and minimal pain, and the treating doctor instructed her to transition to weight-bearing in a boot "as tolerated."   (R. 23, 810-11).   Plaintiff wore normal shoes to her April 2020 appointment, reporting that her left ankle felt "better," and she had intact sensation, no edema, and the incision from surgery had healed well despite swelling.   (R. 790). In May 2020, Dr. Blasdell opined that Plaintiff had "no

restrictions" on sitting, standing, and walking,[7] (R. 767), although he was aware of Plaintiff's surgery and had treated her just a week earlier, (R. 1079). Overall, the objective and subjective findings from Plaintiff's medical examinations are inconsistent with her testimony and demonstrate that "there is nothing in the record to support the severity of symptoms she alleges." (R. 24).

Further, as the ALJ observed, hearing testimony indicates that, post-surgery, Plaintiff could generally perform daily activities without assistance. Id. Plaintiff represented that she could walk up and down stairs, albeit slowly. (R. 50). She stated she could walk for 20 minutes without stopping and exercise her upper body by stretching. (R. 52-53). She further acknowledged that she does not require assistance for personal hygiene and only occasionally requires assistance with her shoes. (R. 53). She sometimes shops by herself, and she can do yardwork and gardening. (R. 51-52). Plaintiff's activities generally show that she is independent and mobile. The standing and walking limitation is thus supported by substantial evidence.

---

[7] The ALJ did not find that Dr. Blasdell's opinion was ultimately persuasive as opinion testimony because the record supported a four-hour standing and walking restriction. (R. 25). However, the ALJ relied on the fact that her "treating provider notes that she has no restrictions" in finding that the evidence was inconsistent with Plaintiff's testimony on her loss of functioning. (R. 24). It was permissible for the ALJ to use these findings for that purpose.

**D.  The ALJ Properly Relied on the VE's Testimony that Plaintiff Acquired Skills from Her Past Work as a CNA that Were Transferrable to a Companion Aide Job.**

Plaintiff argues that the ALJ improperly relied on the VE's testimony to determine that skills from her four-month CNA position were transferrable to a companion aide job.  See Pl.'s Br. (ECF No. 12, at 8-9).  Plaintiff claims that the ALJ's determination is inconsistent with the DOT's definition of transferrable skills because she performed the CNA job for less than six months.  Id. at 9.  However, the Commissioner argues that Plaintiff's four-month employment qualifies under the DOT's definition.  Def.'s Opp'n (ECF No. 14, at 7-8).  After considering the ALJ's opinion and the record, I conclude that the ALJ's classification of Plaintiff's CNA job as PRW is supported by substantial evidence.

At the final step of the sequential analysis, the Commissioner must determine whether a claimant's impairments prevent her from working.  20 C.F.R. § 404.1560(c)(2).  If work exists "in significant numbers in the national economy" that the claimant can perform, a disability finding is precluded.  Id.  When severe impairments prevent the claimant from performing skilled or semiskilled PRW, the issue of transferability arises.  SSR 82-41, 1982 WL 31389, at *1 (Jan. 1, 1982).  If a claimant cannot perform PRW but possesses transferable skills[8] from prior employment, she

---

[8] "A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job

can apply those to "other skilled or semiskilled jobs" within her RFC. Id. at *2. Past work produces transferable skills when there is significant similarity between the requirements for each position, such as similar tools or processes, or when the skill degree is the same or less. See § 404.1568(d)(2). Under the rules, a claimant aged 55 or older who is limited to light or sedentary work is disabled unless she has transferrable skills. § 404.1568(d)(4). Specifically, "there must be very little, if any, vocational adjustment required" for new employment. SSR 82-41, 1982 WL 31389, at *5.

The ALJ in this case appropriately considered whether Plaintiff had transferable skills. With transferability, an ALJ must (1) identify the acquired work skills; (2) identify specific occupations to which the acquired skills can be transferred; and (3) include evidence that jobs are sufficiently prevalent in the economy. Id. at *7. Here, the ALJ found the following transferable skills from Plaintiff's PRW as a CNA and a medical assistant: "knowledge of basic medical terminology; taking vital signs; basic medical and personal care procedures; computer skills; report writing; and record keeping." (R. 26). The ALJ concluded these skills were transferable to other work as a case

---

duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." SSR 82-41, 1982 WL 31389, at *2.

aide, medical clerk, and companion aide. (R. 26-27). Each of these jobs exist in significant numbers within the national economy. See (R. 27). At each step, the ALJ appropriately relied on the VE's testimony. See generally SSR 82-41, 1982 WL 31389.

Plaintiff challenges the classification of her CNA job as PRW because she claims that she was not employed long enough to acquire transferrable skills. Pl.'s Br. (ECF No. 12, at 8-9). As Plaintiff acknowledges and the VE testified, the DOT classifies the CNA job as SVP 4.[9] Id. at 8; (R. 48). An SVP 4 job requires three to six months of work experience for an individual to acquire transferrable skills.[10] Here, Plaintiff worked as a CNA for four months, which is sufficient to acquire the skills. (R. 210) (establishing employment from February to June 2019). She has also not proffered any evidence that she did not receive adequate training or was otherwise denied an opportunity to develop skills during this timeframe. See Pl.'s Br. (ECF No. 12, at 8-9). Further, Plaintiff testified that her lifting limitations -- not training deficiencies -- prevented her from working as a CNA. (R. 45); see also Def.'s Opp'n (ECF No. 14, at 8). The ALJ's

---

[9]  The CNA position was classified as a nurse assistant or nurse aide. See Nurse Assistant (355.674-014), DOT, https://occupationalinfo.org /35/355674014.html (last visited Apr. 12, 2022).

[10]  An Explanation of SVP, Foreign Labor Certification Data Center, https://www.flcdatacenter.com/svp.aspx (last visited Apr. 13, 2022).

classification of her CNA job as PRW is thus supported by substantial evidence.

Lastly, Plaintiff does not challenge the other jobs the VE identified. See Pl.'s Br. (ECF No. 12, at 8-9); (R. 27). To satisfy the burden at step five, the ALJ must identify only one occupation, if jobs in that occupation exist in significant numbers. 20 C.F.R. § 404.1566(b) (requiring jobs "in one or more occupations"). The VE testified that Plaintiff could perform two alternative occupations with significant national opportunity: there are 37,000 jobs nationally as a case aide, and 17,000 jobs nationally as a medical clerk. (R. 59-60). The ALJ relied on these jobs in addition to the position as a companion aide. (R. 27). Accordingly, the ALJ's finding that significant work existed that Plaintiff could perform using her transferrable skills is supported by substantial evidence.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 13), DENY Plaintiff's Motion for Summary Judgment (ECF No. 11), and AFFIRM the Commissioner's finding of no disability.

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 15, 2022

25